IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDY D. COOK, | ) | CASE NO. 3:14 CV 849 |
| | ) | |
| Plaintiff, | ) | JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

# Introduction

Before me by referral[1] is an action by Brandy D. Cook under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Pursuant

---

[1] This matter was referred to me under Local Rule 72.2 in a marginal entry order dated April 21, 2014.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

to my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.   Background facts and decision of the Administrative Law Judge ("ALJ")**

Cook, who was 38 years old at the time of the administrative hearing,[11] did not graduate from high school and currently lives in an apartment with her sons.[12] She reported prior employment as a security guard as well as a part-time seasonal job,[13] but the ALJ found that only the security guard position qualified as past relevant work.[14]

---

[5] ECF # 6.

[6] ECF # 13.

[7] ECF # 17 (Cook's brief); ECF # 20 (Commissioner's brief); ECF # 21 (Cook's reply brief).

[8] ECF # 17-2 (Cook's charts); ECF # 20-1 (Commissioner's charts).

[9] ECF # 17-1 (Cook's fact sheet).

[10] ECF # 22.

[11] Transcript ("Tr.") at 24, 26.

[12] *Id.* at 19.

[13] *Id.*

[14] *Id.* at 24.

The ALJ, whose decision became the final decision of the Commissioner, also found that Cook had the following severe impairments: multiple sclerosis, currently stable; depression; and cervical spine disc bulge at C5-6.[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Cook's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can occasionally and frequently lift and/or carry 10 pounds; stand and walk two hours out of an eight-hour work day, but needs a cane for prolonged walking, over 25 feet; would need a cane at any time for balance; she can sit for six hours out of an eight-hour work day, but must be able to stand and stretch for one minute every hour with normal breaks;[1] she is limited to occasional use of foot pedals; the claimant is limited to occasional posturals; she is precluded from using ladders, ropes, or scaffolds; must avoid all exposure to unprotected heights, dangerous machinery, or commercial driving; cannot engage in jobs that require balance; is limited to unskilled work, defined as simple repetitive tasks with no assembly type requirements; is limited to frequent fine manipulation and frequent gross manipulation.[16]
>
> > [1] normal breaks consists of two 15 minute breaks one in the morning and one in the afternoon and two additional unscheduled breaks of 10-15 minutes each taken during an eight-hour work day and a 1/2 hour lunch.

The ALJ decided that this RFC precluded Cook from performing her past relevant work as a security guard.[17]

---

[15] *Id.* at 14.

[16] *Id.* at 17.

[17] *Id.* at 24.

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Cook could perform.[18] The ALJ, therefore, found Cook not under a disability.[19]

**B.     Issues on judicial review and decision**

Cook asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Cook challenge presents the following issues for judicial review:

- The ALJ assigned the opinion of Cook's treating neurologist, Dr. Boyd Koffman, little weight. Did the ALJ give good reasons for the weight assigned to this opinion?

- The ALJ found that Cook had a moderate limitation in social functioning. Nevertheless, the ALJ's RFC finding incorporated no social functioning related limitations to compensate for this impairment. Does substantial evidence support the absence of social functioning related limitations from the RFC?

For the reasons that follow, I will recommend that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, should be reversed and the matter remanded for further proceedings.

---

[18] *Id.* at 25.

[19] *Id.* at 25.

-4-

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

*2.    Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

---

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate

---

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status

---

[40] *Id.* at 375-76.

[41] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

---

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

-10-

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt

---

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

---

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

---

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

**B.     Application of standards**

Although this case, as noted, presents two issues for judicial review, the central question is whether the ALJ properly handled the opinion of Cook's treating neurologist under the rubric set forth is the Sixth Circuit's *Wilson/Gayheart* line of authority. Because, as will be discussed below, I will recommend that she did not analyze that opinion consistent with that precedent, I will recommend that the decision here be reversed and the matter remanded. Moreover, if this recommendation is accepted, it will not be necessary to adjudicate the question of whether the RFC should have contained additional limitations as to social functioning.

Essentially, the ALJ in this case did not follow the two-step analytical protocol of *Gayheart* in considering Dr. Koffman's opinion, but instead simply pronounced that the opinion should receive little weight.[71] The ALJ supported that conclusion with the observation that the opinion was "inconsistent with Dr. Koffman's own clinical findings," such as his treatment note of February 24, 2012 that Cook's "multiple sclerosis was clinically stable, [that] she had no physical disability, and she had no impaired mobility."[72]

The treatment note at issue[73] summarizes the results of an examination of Cook by Dr. Koffman on the previous day, February 23, 2012. The note reflects that Cook had been dealing with MS for a number of years, and had recently altered the medication she was

---

[71] Tr. at 22.

[72] *Id*.

[73] Tr. at

taking to manage her symptoms.[74] As stated by the ALJ, Dr. Koffman does opine in this note that Cook's MS "is clinically stable" and that she is "currently on fingolimod for disease modifying therapy."[75] Later, Dr. Koffman does also note, as the ALJ observed, that Cook had "[n]o impaired vision[,]" "[n]o physical disability[,]" and "[n]o impaired mobility."[76] But in that same section, Dr. Koffman further states that Cook has a "[h]istory of seizures, dementia, convulsions or disorientation[;]" a "history of prior falls[;]" and is "at risk for falls."[77] In addition, Dr. Koffman stated that while Cook did not have impaired mobility, she displayed "weakness or unsteady gait."[78]

In considering the observations recorded in this note, I observe first that the comment that Cook's MS was "clinically stable" must be understood as only stating that Cook's MS was not then manifesting itself in new, observable symptoms; in exacerbations of existing symptoms; or in the increase of any disability.[79] It does not mean that the MS has been "cured" or "reversed" or that there are no longer any disabling symptoms. Thus, of itself, the

---

[74] *Id*. at 882.

[75] *Id.*

[76] *Id*. at 884.

[77] *Id*.

[78] *Id*.

[79] *See*, *e.g.*, *Defining Success in Multiple Sclerosis: Treatment Failures and Non-Responders*. Johns Hopkins Advanced Studies in Medicine, Vol. 8, No. 8, August 2008 at 274-283. Benjamin Greenberg, MD, MHS, and Elliot M. Frohman, MD, PhD, FAAN.

notation that the MS is "clinically stable" must not bear too much weight in understanding the level of disability present in a particular case.

In addition, Dr. Koffman's notations that Cook had no "impairment" of mobility does not speak to whether that ability to walk is nevertheless otherwise impaired by difficulties with her balance, which he addressed by means of a comment that she has a history of prior falls and is at risk of falls. It is also true that Dr. Koffman's observation that Cook has no "physical disability" does not preclude his other conclusion that she also experiences extensive fatigue, which is frequently associated with MS, and may not have any other physical basis.

Thus, while the ALJ here correctly cited to the conclusions Dr. Koffman recorded in his treatment notes, the ALJ incorrectly found those conclusions were necessarily at variance with Dr. Koffman's other conclusions as to disability. In short, the reasons given by the ALJ were not "good reasons" for discounting Dr. Koffman's opinion.

Moreover, I am aware – as Cook points out in her brief – that Dr. Koffman had treated Cook for nearly a year when he rendered an opinion on her ability to work in October, 2011.[80] The obvious benefits gained by a medical source in treating a patient over a significant period of time is a major reason why the regulations provide that the opinion of a treating source is entitled to a presumption of controlling weight, subject to a rebuttal of that presumption by a citation to "good reasons" by an ALJ. As noted, the reasons given here

---

[80] ECF # 17 at 8.

-16-

did not rise to the level of being "good reasons" sufficient to reduce the weight given to Dr. Koffman's opinion as to disability.[81]

Thus, for the foregoing reasons, I recommend finding that the decision of the Commissioner in this regard is not supported by substantial evidence and so the matter must be remanded for further proceedings.

That said, if this recommendation is adopted, it is not necessary to address the other issue raised by Cook concerning a lack of evidence related to any limitation on work-related interaction with others. However, for the sake of completeness, I offer the following review of that claim below.

Cook contends that although the ALJ did find that she had a moderate limitation on social functioning, no source offered an opinion to that effect or an opinion regarding any limitations on job-related interaction with others. However, the ALJ did identify the existing jobs with regional numbers[82] in response to the RFC hypothetical. Cook's counsel added to the hypothetical that the individual should have no contact with the general public and brief

---

[81] I would add that the ALJ also failed to recognize that Dr. Koffman, as a neurologist, is a specialist in treating and understanding MS. Such specialization, where present, is yet another reason why the treating source's opinion is entitled to controlling weight, and why requiring ALJs to follow the Sixth Circuit's two-step analysis in cases of treating sources is so important. This multi-level analysis ensures that all the factors going into giving preference to treating sources – such as having a relevant specialty and maintenance of a treatment relationship over a substantial period – are explicitly recognized by the ALJ in the decision process. In addition, following this rubric permits the claimant to see that process at work and permits later meaningful review by the court. While I am well aware that the precedents of this Circuit and this District permit some latitude in the way ALJs handle the requirements of *Gayheart*, it is important not to let the exceptions swallow the rule.

[82] Tr. at 92.

and superficial contact with coworkers and supervisors.[83] The VE answered that these limitations would eliminate the counter clerk, security guard, and information clerk positions.[84] This would leave the general office clerk job with 4,700 jobs available regionally and the hand packer and stock handler job, which has 4,200 jobs regionally.[85]

Thus, I believe those numbers are still significant for step five analysis purposes. Accordingly, the absence of social functioning related limitations does not appear to provide an independent basis for reversing the decision here and remanding the matter for further proceedings.

## Conclusion

For the reasons stated, I recommend finding that substantial evidence does not support the finding of the Commissioner that Cook had no disability. Accordingly, I recommend that the decision of the Commissioner denying Cook's applications for disability insurance benefits and supplemental security income be reversed and the matter remanded for further administrative proceedings consistent with this opinion.

Dated: March 3, 2015                              s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

---

[83] *Id.* at 93.

[84] *Id.* at 94.

[85] *Id.*

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[86]

---

[86] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).